IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| RICHARD SHAWN PIPKIN, ) <br> ) <br> Petitioner, ) <br> ) <br> vs. ) <br> ) <br> WARDEN MACDOUGALL CORRECTIONAL ) <br> INSTITUTION, ) <br> ) <br> Respondent. ) <br> ) | Civil Action No. 3:09-1803-TLW-JRM <br><br> **REPORT AND RECOMMENDATION** |

Petitioner, Richard Shawn Pipkin ("Pipkin"), filed a petition for a writ of habeas corpus on July 8, 2009.[1] He is presently on probation, having completed the custodial part of his sentence imposed in Georgetown County for attempted first degree burglary. Respondent filed a return and motion for summary judgment on December 7, 2009. Because Pipkin is proceeding *pro se*, the Court issued an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), explaining his responsibility to respond to Respondent's motion. Pipkin filed a one page response on February 1, 2010 which did not address the issues raised by Respondent. Pretrial matters were automatically referred to the undersigned in this case pursuant to Local Rule 73.02(B)(2)(c) and (e).

## **Background and Procedural History**

Pipkin's conviction resulted from a volatile relationship with a former girlfriend, Patsy Cribb.

---

[1] Pipkin indicates that he delivered his petition to the institutional mailroom on March 11, 2009. (Petition, p. 16). The envelope in which it was received by the Court is stamped as having been received for mailing on June 30, 2009. However, Respondent has not raised the statute of limitations as a defense and the filing date is not in controversy.

1

The South Carolina Court of Appeals summarized the trial testimony as follows:

> Patsy Cribb and Pipkin began dating in November 1998. In March 1999, Pipkin moved into Cribb's apartment. By July, their relationship had become unstable and there were instances of physical abuse. Cribb moved out of the shared apartment in August.
>
> In January 2000, Cribb moved into an apartment in the home of her sister and brother-in-law (Richardsons). After moving in with the Richardsons, Cribb began seeing Pipkin "occasionally."
>
> According to Pipkin, he and Cribb began seeing each other four or five times a week and renewed the sexual aspect of their relationship after Cribb moved in with her sister.[2]
>
> Pipkin was released on bond pending trial with strict orders not to contact Cribb. Cribb, nevertheless, visited Pipkin's apartment to talk with him the Friday after his release. After this meeting, they again began having a secret love affair, meeting four to five times a week. During this rekindled relationship, there was another incident of severe physical abuse.
>
> At some point, Cribb allegedly broke into Pipkin's trailer home and damaged some items. Cribb denied these allegations, but admitted at Pipkin's trial that she was jailed for the incident. The judge also allowed testimony from Pipkin's two brother regarding this damage and Cribb's presence at the trailer at the time of the damage. During the examination of Pipkin's father, however, the judge sustained objections to similar testimony on the ground of relevance.
>
> Pipkin was convicted on one court of attempted first-degree burglary. This appeal follows.

State v. Pipkin, 359 S.C. 322, 597 S.E.2d 831 (Ct.App. 2004).

Pipkin was convicted on one charge of attempted first degree burglary. He was represented at trial by Reuben Goude, Esquire.

A direct appeal was filed through the South Carolina Office of Appellate Defense raising the following issues:

---

[2]Cribb's sister and Richardson forbade her to see Pipkin. Accordingly, he would sneak into the apartment to avoid being seen by them.

2

> 1. Did the lower court err by denying appellant's motion to present evidence of the alleged victim's bias?
>
> 2. Did the lower court err by denying appellant's motion for a directed verdict of not guilty of burglary, when the alleged victim consented to appellant's presence in her home?

The conviction was affirmed by the South Carolina Court of Appeals. *Id.* Pipkin's motion for a rehearing was denied, and he filed a petition for writ of certiorari in the South Carolina Supreme Court raising the issue concerning the denial of the admission of his father's testimony relating to bias on the part of Cribb. The petition for writ of certiorari was denied on September 22, 2005. The Remittitur was returned on September 26, 2005.

Pipkin filed an application for post-conviction relief ("PCR") on October 10, 2005. (App. 794). An evidentiary hearing was held on July 24, 2006. (App. 811). Pipkin was represented by William Susman, Esquire. The PCR court filed an order of dismissal on August 29, 2006. (App. 969).

Pipkin filed a petition for writ of certiorari in the South Carolina Supreme Court raising the following issue:

> Is Pipkin entitled to post conviction relief based on one judge granting retained trial counsel's motion to be relieved and another judge, 30 days later, denying a motion for a continuance resulting in a violation of petitioner's Sixth Amendment right to retained counsel of his choice.

The case was transferred to the Court of Appeals. The Petition for writ of certiorari was denied on January 7, 2009. The Remittitur was returned on February 11, 2009.

## **Grounds for Relief**

In his present petition, Pipkin asserts that he is entitled to a writ of habeas corpus on the following grounds:

3

**Ground One:**   Did the trial court err denying Petitioner's motion to present evidence of the alleged victim's bias?

**Supporting facts**: We made offer of proof to present evidence of alleged victim's bias, the lower court denied the motion which deprived me of my constitutional right to full present a defense.

**Ground Two:**   Pipkin is entitled to post conviction relief based on one judge granting retained trial counsel's motion to be relieved and another judge, 36 days later, denying a motion for a continuance resulting in a violation of petitioner's Sixth Amendment Rights to retained counsel fo his choice.

**Supporting facts**: I hired an attorney of my chosing after a year and a-half the deal he made with the solicitor office fail through, and he wanted off the case. I told him and the lower court the only way I could let him off the case was to have a bond so that I could go out and find the right attorney for my case, but the lower court didn't allow me a bond and still took the attorney of my chosen away with out my consent. I don't feel like the lower court did a proper balancing of ethical rule and defendant 6th admendment right by taking my lawyer away.

## Discussion

Since Pipkin filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir.), *cert. denied,* 521 U.S. 371 (1998) and Green v. French, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999). That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless

4

> the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has addressed procedure under § 2254(d). *See* Williams v. Taylor, 529 U.S. 362 (2000). In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases .... A state- court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.
>
> * * *
>
> [A] state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the] Court's precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id.* at 1519-20. Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 1521.

### 1. Admission of Evidence

In his first ground for relief, Pipkin alleges that the trial court erred in refusing to admit testimony from his father that the victim, Ms. Cribb, was biased against him. At trial, Pipkin called his father, George Pipkin, to testify that while Pipkin was on bond Ms. Cribb attempted to break into a mobile home occupied by Pipkin. The state objected and the trial court sustained the objection

5

based on relevance. (App. 646-647). The issue was raised on direct appeal. The Court of Appeals ruled that the trial court did not abuse its discretion in denying admission of the testimony. Alternatively the Court of Appeals found that, even if there was an abuse of discretion, the error was harmless because the proposed testimony was cumulative.

Pipkin now alleges that the trial court erred in sustaining the State's objection to the evidence, and additionally, the ruling deprived him of his "constitutional right to fully present a defense."

Insofar as Pipkin alleges that the trial court abused its discretion in denying his father's testimony, he does not state a cognizable issue. This Court may grant habeas relief on a finding that a state prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Generally, a claim that the trial court admitted evidence, or denied admission of evidence, raises only an issue of state law or procedure. *See* Duncan v. Henry, 513 U.S. 364, 366 (1995) (habeas relief unavailable on an allegation of violation of state evidentiary rules).

At trial, and on direct appeal, Pipkin only argued that the court's ruling violated state law. He did not raise a constitutional claim. In his present petition, Pipkin, for the first time, alleges a constitutional violation. Because the federal constitutional violation was not raised in state court, it is procedurally barred. *See* Coleman v. Thompson, 501 U.S. 772 (1991).

Even if this claim were properly before this Court, Pipkin would not be entitled to relief. Pipkin would be required to allege and show that the court's ruling denied "fundamental fairness" or that specific constitutional protections were involved. Grundler v. North Carolina, 283 F.2d 798, 802 (4th Cir. 1960). Pipkin makes no such allegation and the record does not support such a claim.

**2. Counsel of Choice**

Pipkin was arrested on October 27, 2000, and was released on bond with a condition that he

not contact the victim. He retained Robert L. Lumpkin, Jr., Esquire to represent him in the case. Mr. Lumpkin negotiated a plea which would have resulted in a probationary sentence for Mr. Pipkin. However, before the plea could be entered, Pipkin threatened Ms. Cribb and the Richardsons. Pipkin's bond was revoked at a hearing on March 19, 2001. (App. 1). He remained in custody, and another hearing was held on March 11, 2002. (App. 18). At that hearing Mr. Lumpkin moved that bond be restored, since Pipkin had been in jail for almost a year, and that he be relieved as counsel. Pipkin took the position that he would not oppose Mr. Lumpkin being relieved if he could be released on bond to find another attorney. The State announced that it intended to call the case for trial at the April 2002 term of court. The court granted the motion to be relieved, appointed Mr. Goude to represent Pipkin, and ordered that Mr. Pipkin would be released on bond with restrictions if the case was not tried in April of 2002. The case proceeded to trial as scheduled and Pipkin was convicted.

In his PCR, Pipkin asserted that the court's actions deprived him of the counsel fo his choice. He testified that the attempted to hire another attorney who refused to accept the case based on short notice. The PCR court found no constitutional violation since Pipkin had the opportunity to hire another attorney, and his inability to do so was not the fault of the court or Mr. Goude. (App. 977-978).

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right...to have Assistance of Counsel for his defense." U.S. Const. amend. VI. This guarantee demands that a non-indigent defendant be given a fair opportunity to secure counsel of his own choosing. Powell v. Alabama, 287 U.S. 45, 53 (1932). The defendant's right to counsel of choice "reflects constitutional protection of the defendant's free choice independent of concern for the objective fairness of the proceeding." Flanagan v. United States, 465

7

U.S. 259, 267-68 (1984). However, this right is not absolute. Sampley v. Attorney General of North Carolina, 786 F.2d 610, 612 (4th Cir.), *cert. denied*, 478 U.S. 1008 (1986). For example, an indigent defendant may not insist on appointment of counsel of his choosing. A defendant cannot require that he be represented by an attorney who is not a member of the court's bar or that a court honor his waiver of a conflict of interest. United States v. Gonzales-Lopez, 548 U.S. 140, 151-152 (2006).

Perhaps the most common situation in which this issue arises is when the defendant hires new counsel who seeks a continuance on the eve of trial. A defendant's right to counsel of his choice may be limited where allowing such a choice would interfere with the "orderly and expeditious" administration of justice. United States v. Corporan-Cuevas, 35 F.3d 953, 956 (4th Cir. 1994). The court facing such a situation must balance the defendant's Sixth Amendment right with other countervailing interests such as the court's calendar and the availability of witnesses, attorneys and jurors. Morris v. Slappy, 461 U.S. 1, 11 (1983). Thus, a court has "wide latitude in balancing the right to counsel of choice against the needs of fairness...and against the demands of its calendar." Gonzales-Lopez, 548 U.S. at 152. Wrongful denial of counsel of choice is a structural defect in the process which does not necessitate the defendant showing prejudice. *Id*. at 147.

The trial court balanced Pipkin's right to counsel against the demands of the court calendar including the victim's right to proceed to trial. Pipkin's rights were protected by appointing counsel and allowing him to seek other counsel if he desired. The PCR court's ruling was not contrary to, or an unreasonable application of, established federal law.

**Conclusion**

Based on a review of the record, it is recommended that Respondent's motion for summary judgment be **granted** and the petition **dismissed** without an evidentiary hearing.

_____
Joseph R. McCrorey
United States Magistrate Judge

March 2 , 2010
Columbia, South Carolina

**The parties are referred to the Notice Page attached hereto.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).